UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZIHRA SAAD and MAHMOOD SAAD,

    Plaintiffs,

v.

    Case No. 10-12635

    Honorable Patrick J. Duggan

CITY OF DEARBORN et al.,

    Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 26, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Zihra Saad and her husband, Mahmoud Saad, filed this civil rights action pursuant to 42 U.S.C. § 1983 to recover damages for violations of their constitutional rights and injuries sustained during an encounter with Dearborn Heights police officers at the Saad residence on March 10, 2010. The remaining defendants include the City of Dearborn Heights ("the City"), Dearborn Heights police officers Michael Krause, Jeffrey Ross, Rodney Smith, Rick Duffany, Officer Oblak, and several unnamed police officers.

Presently before the Court is Defendants' motion for summary judgment, filed on May 13, 2011 pursuant to Federal Rule of Civil Procedure 56. Also before the Court is Defendants' motion to strike Plaintiffs' surreply brief, filed on July 7, 2011. These matters

have been fully briefed, and the Court has indicated to the parties that it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court denies Defendants' motion to strike Plaintiffs' surreply brief and grants in part Defendants' motion for summary judgment.

## I. Factual and Procedural Background

On March 10, 2010, Officer Krause was enforcing stop sign violations at the corner of Rosetta and Meadlawn in Dearborn Heights, Michigan. He observed Plaintiffs' son, Joseph Saad,[1] turn at the corner without stopping his vehicle. Krause activated the lights atop his vehicle and signaled for Joseph to pull over. Krause claims that Joseph sped up and then turned in front of him onto Melborne Street. Joseph drove a short distance and pulled into to the driveway of his parents' home, with Krause following closely behind.

Joseph exited his vehicle and was proceeding toward the home when Krause called to him to ask him to get back in his car. Krause claims that he repeated this instruction several times. Joseph turned and saw Krause standing near his police cruiser. Krause alleges that Joseph responded by clenching his fists, swearing, and yelling at Krause to get out of his driveway. Krause Dep. 54:12-22, Mar. 16, 2011. Joseph claims that he only stated that he was going inside the home to retrieve his wallet. J. Saad Aff. ¶ 11. Krause drew his Taser weapon from his belt. He claims that Joseph began swearing and yelling about the weapon and began walking toward him. Krause Dep. 57:19-22. Krause tried unsuccessfully to fire the Taser, and then reholstered it. As he was doing so, Joseph ran

---

[1] For simplicity and to avoid confusion with his father, this Opinion and Order will refer to Joseph Saad by his first name.

toward the front door of the home. Krause followed him and grabbed his wrist to prevent him from entering the home. Joseph broke free, entered the unlocked front door, and shut and locked the door behind him. Krause claims that Joseph began yelling obscenities at him from inside the home, and he asked him repeatedly to come back outside. Krause Dep. 69:4-14. Joseph claims that as he entered the home, he was yelling, "the police are going to shoot me!" J. Saad Aff. ¶ 14.

Krause drew his firearm and radioed for backup because he did not know what Joseph was doing inside the home. Joseph's mother, Plaintiff Zihra Saad, soon appeared at the door and stepped out onto the front porch. She testified that she asked Krause:

> What's the matter? What's going on? Why you - you pointing your gun and you want to shoot? What's the matter? What's going on? Did he kill somebody? Did he run over someone?

Z. Saad Dep. 25:13-16, Jan. 28, 2011. Mrs. Saad also claims that Krause told her to let him into the home, and she refused. Z. Saad Dep. 25:24-26:2. She alleges that he pointed his pistol at her while making this demand. Z. Saad Aff. ¶ 4. Krause testified that he asked Mrs. Saad to have Joseph come outside, saying, "you're going to make this into a bigger deal than what it needs to be . . . there's going to be several cars show[ing] up, police officers, you know, it's going to be a big scene out here and we don't need this." Krause Dep. 81:15-21. Mrs. Saad pleaded with the officers not to enter the home.

At some point, backup officers arrived at the Saad residence. Officer Ross, the canine officer, came to the porch with a police dog. Mrs. Saad testified that the police dog barked loudly at her from a distance of four to five feet while Ross restrained it. Z. Saad Dep. 61:25-62:16. Several officers and the police dog circled around to the back of the

home and entered through the back door. The officers then opened the front door. Ross commanded Joseph to come up the stairs from the basement, and Joseph eventually did so. Defendants claim that he resisted as they struggled to handcuff him, Krause Dep. 88:14-89:24, while Joseph maintains that he came upstairs with his hands raised and cooperated with the officers. J. Saad Aff. ¶¶ 18-19. After he was handcuffed, the officers led Joseph outside and placed him in a police vehicle to be taken away. Mrs. Saad testified that the officers were "pushing him around" and "were rough with him." Z. Saad Dep. 35:15-17.

Plaintiffs filed this action on July 2, 2010, asserting a number of claims under federal and state law. Defendants moved to dismiss Plaintiffs' conspiracy-related claims, and the Court granted this motion in an order dated October 28, 2010. Defendants have moved for summary judgment on the remaining claims pursuant to Rule 56.

## II. Defendants' Motion to Strike

The Court first addresses Defendants' motion to strike Plaintiffs' surreply brief. Plaintiffs filed a surreply brief to Defendants' motion for summary judgment on June 28, 2011, making an argument relying in part on an attached affidavit of Zihra Saad dated that same day. Defendants have moved to strike Plaintiffs' surreply brief, arguing that the court rules do not authorize such a filing.

Although a party does not have the right to file a surreply brief under the Federal Rules of Civil Procedure, *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 599 (6th Cir. 2003), the Court has discretion to permit such a filing where it is reasonable. *Seay v. TVA*, 339 F.3d 454, 480 (6th Cir. 2003). Plaintiffs' surreply purports to clarify Mrs. Saad's prior testimony, as the attached affidavit states that Krause pointed

4

his pistol at Mrs. Saad while the two were on the front porch. Z. Saad Aff. ¶ 4. The Court has carefully reviewed Mrs. Saad's prior testimony and concludes that it is somewhat ambiguous as to whether Krause pointed a gun at her. The affidavit is helpful in that it clarifies a material dispute of fact between the parties. The Court therefore concludes that Defendants' motion to strike the surreply brief should be denied.

### III. Defendants' Motion for Summary Judgment

**A. Standard of Review and Governing Law**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could

reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant acted under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). Defendants concede that the police officers in this case acted under color of state law. They maintain, however, that Plaintiffs were not deprived of rights or privileges that would give rise to liability under § 1983. The Court considers each of Plaintiffs' claims in turn to determine whether such a deprivation has been established.

## B. Plaintiffs' Excessive Force Claim

Count I of the Amended Complaint alleges that Defendants used excessive force against Mrs. Saad by threatening her at gunpoint and intimidating her with the police dog. Defendants argue that there is no evidence substantiating an excessive force claim.

The Court first addresses Plaintiffs' claim that Officer Krause held Mrs. Saad at gunpoint while demanding to be let into her home. Defendants assert that Mrs. Saad never testified that any officer pointed a gun at her. At her deposition, Mrs. Saad testified:

And I asked [Officer Krause]: What's the matter? What's going on? Why you

> - why you pointing your gun and you want to shoot?  What's the matter?  What's going on?  Did he kill somebody?  Did he run over someone?
>
> He said: No.
>
> I said: What's it about?  What do you need?
>
> He said: He ran a stop sign.
>
> I said: He ran a stop sign and you're pointing your gun at him and you want to kill him?  What's going on here?
>
> He said: Let me in.

Z. Saad Dep. 25:13-24, Jan. 28, 2011.  Mrs. Saad's testimony is ambiguous as to whether Krause pointed his gun at her in addition to pointing it at Joseph.  For purposes of Defendants' motion for summary judgment, however, the Court must accept Plaintiffs' evidence as true and draw all justifiable inferences in their favor.  Mrs. Saad testified that Joseph was inside the house at the time, and while she was on the porch, she apparently asked Krause why he was pointing his gun.  Because Mrs. Saad and Officer Krause were the only people on the porch at the time, it is possible to infer that Krause pointed the gun at her.  Mrs. Saad's affidavit also purports to clarify her testimony, stating that Krause pointed his pistol at her while the two were on the front porch.  Z. Saad Aff. ¶ 4.  The Court concludes that there is sufficient evidence to raise a question of fact as to whether Krause pointed his weapon at her.

This question of fact is material, because if Officer Krause pointed his firearm at Mrs. Saad while demanding entry into her home, it could constitute excessive force in violation of the Fourth Amendment.  Excessive force claims are evaluated under an "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct.

7

1865, 1871 (1989). The Court must balance the nature of the intrusion on the individual's Fourth Amendment interests against countervailing governmental interests. *Id.* at 396, 109 S. Ct. at 1871. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S. Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S. Ct. at 1872. Proper application requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872. Here, Mrs. Saad was not suspected of committing any crime, and the facts do not indicate that she posed a threat to anybody's safety. The Sixth Circuit has held that pointing a gun at an unarmed suspect who is not fleeing or posing a risk to police officers may be an objectively unreasonable use of force. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Thus, if the jury finds that Krause pointed his weapon at Mrs. Saad while demanding entry into her home, it could conclude that excessive force was used against her. Summary judgment must be denied with respect to this claim.

The Court next turns to Plaintiffs' claim that Defendants' intimidation of Mrs. Saad with the police dog constituted excessive force. Plaintiffs have not set forth any evidence indicating that Mrs. Saad was targeted either purposely or inadvertently by the police dog.

The evidence instead shows that the police dog was brought to the scene to locate and apprehend Joseph. "'[T]he use of a properly trained police dog to apprehend a felony suspect does not carry with it a substantial risk of causing death or serious bodily harm.'" *Matthews v. Jones*, 35 F.3d 1046, 1051 (6th Cir. 1994) (quoting *Robinette v. Barnes*, 854 F.2d 909, 912-13 (6th Cir. 1988)). *In Matthews*, the police dog bit the suspect after he suddenly moved, and the court held that the use of the dog did not constitute excessive force. *Id.* at 1051. Here, there is no evidence indicating that the dog harmed Mrs. Saad in any way. Although she was frightened by the dog's barking, there is no evidence upon which the Court could conclude that the police's use of the dog was improper. The use of force was objectively reasonable, as the police were attempting to apprehend a hiding suspect whose intentions were at that time unknown. The police dog could frighten bystanders such as Mrs. Saad, but the Court believes that the law enforcement interest at stake was considerably greater under these circumstances. The Court therefore grants summary judgment with respect to Plaintiff's claim involving the use of the police dog.

**C. Plaintiffs' Unreasonable Search Claim**

Count II alleges that the Defendant officers invaded the Saad home absent consent or a warrant. Am. Compl. ¶ 80. Defendants contend that their entry was justified by the "hot pursuit" exception to the Fourth Amendment's warrant requirement.

The Supreme Court has noted that "exceptions to the warrant requirement are few in number and carefully delineated." *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S. Ct. 2091, 2097 (citation and quotation omitted). The Fourth Amendment permits warrantless searches and seizures inside a home where exigent circumstances exist and police officers

9

have probable cause to believe that a felony has been committed. *Payton v. New York*, 445 U.S. 573, 587-88, 100 S. Ct. 1371, 1381 (1980). Exigent circumstances have been found where officers are engaged in hot pursuit of a suspect. *Lyons v. City of Xenia*, 417 F.3d 565, 586 (6th Cir. 2005). Under the "hot pursuit" exception, "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43, 96 S. Ct. 2406, 2410 (1976). The exception requires "immediate or continuous pursuit . . . from the scene of a crime." *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S. Ct. 2091, 2099 (1984).

Krause had probable cause to believe that Joseph Saad had committed the felony of obstruction, which includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." *See* Michigan Compiled Laws § 750.81d(7)(a). Probable cause to arrest exists where the facts and circumstances within the police officer's knowledge are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit a criminal offense. *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002). Even if Joseph did not hear Krause's order to return to his vehicle, as he claims, Krause had probable cause to believe that Joseph had committed the felony of obstruction by disobeying that order. It is also clear that Krause was in hot pursuit of Joseph. Krause observed Joseph ignore his order and rush inside the home. It is irrelevant that the pursuit was brief. *See Santana*, 427 U.S. at 43, 96 S. Ct. at 2410 ("The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry."). Because Krause was in hot pursuit of Joseph and had probable cause to believe that he had

committed a felony offense, warrantless entry into the Saad residence was permissible.

Plaintiffs argue that a traffic infraction is insufficient to justify Defendants' entry into their home without a warrant. Plaintiffs rely on *Welsh* for the proposition that the gravity of the underlying offense drives the inquiry. In *Welsh*, however, the defendant was suspected of committing a civil traffic infraction punishable only by a fine. *Welsh*, 466 U.S. at 753, 104 S. Ct. at 2099. Here, Krause had reason to believe that Joseph had committed a felony punishable by a fine or imprisonment for a term of up to two years, or both. Michigan Compiled Laws § 750.81d(1). Joseph's failure to follow Krause's lawful command justified entry into the home.

Plaintiffs rely on *People v. Strelow*, 96 Mich. App. 182, 292 N.W.2d 517 (Mich. Ct. App. 1980), for the proposition that flight alone does not justify an arrest. In that case, however, the defendant was suspected of committing a misdemeanor offense. *Id.* at 189, 292 N.W.2d at 520. The *Strelow* court specifically noted this in distinguishing *Payton*, which was at that time pending before the Supreme Court: "Even if the Court finds no constitutional violation involved in [a warrantless felony] arrest, the seriousness of a felony offense, as opposed to a misdemeanor, must be considered in comparison." *Id.* at 192, 292 N.W.2d at 522. *Strelow* therefore provides little support for Plaintiffs' argument.

The Court concludes that because the Defendant officers' warrantless entry was justified under the Fourth Amendment, Defendants must be granted summary judgment on Count II.

### D. Plaintiffs' Municipal Liability Claims Against the City

Count Four asserts that the City is liable for an alleged policy of using excessive

force in confronting law-abiding citizens. Am. Comp. ¶¶ 99-100. The standard that a plaintiff must satisfy to prevail in a municipal liability claim is clear:

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2039 (1978). Plaintiffs must establish that the municipal policy or custom was the "moving force" behind their injuries. *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). Plaintiffs have failed to point to any policy or custom of the City authorizing the use of excessive force, and there is no evidence before this Court indicating that Krause's alleged actions represented anything other than an isolated incident. The Court therefore grants summary judgment for Defendants on Count Four.

Count Five asserts that the City failed to adequately train its police officers regarding the appropriate use of force. Am. Compl. ¶ 105. "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989). "[T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390, 109 S. Ct. at 1206. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91, 109 S.

Ct. at 1206. "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391, 109 S. Ct. at 1206.

Plaintiffs' evidence falls short of meeting this exacting standard. Plaintiffs argue that the City provided its police officers with inadequate training in dealing with elderly and disabled citizens. Although the City does not have a specific policy relating to police officers' interactions with the elderly or disabled, there is no indication that such a policy is necessary. Plaintiffs have not provided any evidence suggesting that police officers require specialized training in dealing with these classes of persons. Furthermore, there is no evidence indicating that Plaintiffs' status as elderly and/or disabled persons impacted their treatment or otherwise contributed to their injuries. The Court cannot conclude that the alleged training deficiency is closely related to the claimed injuries, and therefore grants summary judgment for Defendants as to Count Five.

**E. Plaintiffs' Claims Against the Unnamed Police Officers**

Count Six alleges that unnamed police officer defendants witnessed police officers using excessive force against Mrs. Saad and violating Plaintiffs' constitutional rights, yet failed to intervene. "[A] police officer who fails to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). As noted above, the only excessive force claim subject to a genuine dispute of material fact is

13

Plaintiffs' claim that Krause pointed his pistol at Mrs. Saad while demanding to be let into the home.  There is no indication that other police officers had arrived at the scene in time to witness this action.  Thus, Plaintiffs have failed to set forth any evidence showing that another officer observed or had reason to know that excessive force would be or was being used.  For the same reason, the Court concludes that Plaintiffs have not presented evidence showing that another officer had the opportunity and the means to prevent the harm.  The Court accordingly concludes that Defendants must be granted summary judgment with respect to Count Six.

**F. Plaintiffs' Intentional Tort Claims**

Plaintiffs assert state law claims of assault, false imprisonment, and intentional infliction of emotional distress against the defendant police officers.  The officers contend that they are entitled to governmental immunity with respect to these claims, while Plaintiffs argue that immunity does not apply because the officers acted in bad faith.

The Michigan Supreme Court outlined the test that courts must follow in determining whether a defendant is entitled to governmental immunity from intentional tort liability in *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (Mich. 2008).  The defendant claiming immunity must show: (1) that the acts were taken during the course of his employment and he was acting within the scope of his authority or reasonably believed that he was acting within the scope of his authority; (2) the acts were taken in good faith, or were not undertaken with malice; and (3) the acts were discretionary.  *Id.* at 480, 760 N.W.2d at 228.

Defendant Krause has not made the required showing of good faith with respect to

14

Plaintiffs' claim that he pointed his gun at Mrs. Saad. If the jury believes Mrs. Saad's testimony, it could infer that Krause acted with malicious intent. This incident is the subject of Plaintiffs' claims of assault (Count Eight), intentional infliction of emotional distress (Count Ten), and false imprisonment (Count Twelve) against Krause. The Court cannot conclude that Krause is entitled to governmental immunity with respect to these claims.

As for Plaintiffs' claims involving the police dog, the Court has already concluded that there is no evidence indicating that Defendants used the dog improperly. Defendants presented testimony indicating that the dog was used to apprehend Joseph, and Plaintiffs have introduced no evidence showing otherwise. Defendants have established a lack of malicious intent with respect to this incident. This incident is the subject of Plaintiffs' claims of assault (Counts Eight and Nine), intentional infliction of emotional distress (Count Ten), and false imprisonment (Count Twelve) against the defendant officers. It is clear that the police dog was used during the scope of the officers' employment and authority, and Plaintiffs have conceded that the acts underlying their intentional tort claims were discretionary. Pls.' Resp. Br. 26. The Court therefore concludes that the defendant officers are entitled to immunity with respect to these claims.

**G. Plaintiffs' Claim of Negligent Infliction of Emotional Distress**

Plaintiffs assert that the defendant officers injured Joseph Saad as they apprehended him, negligently inflicting emotional distress on Mrs. Saad, who observed the encounter. Defendants assert that the officers are entitled to governmental immunity with respect to this claim. A police officer is immune from tort liability in the course of his employment

15

if: (1) he reasonably believes that he is acting within the scope of his authority; (2) the agency was engaged in the exercise of a governmental function; and (3) the officer's conduct does not amount to gross negligence that is the proximate cause of the plaintiff's injury. Michigan Compiled Laws § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7)(a).

Plaintiffs argue that the defendant officers were grossly negligent in their treatment of Joseph. Mrs. Saad testified that the police officers were "rough" Joseph when they apprehended him and took him to the police cruiser, Z. Saad Dep. 27:11, but the Court cannot conclude that such conduct rises to the level of recklessness, as there is no indication that the officers acted with a "substantial lack of concern" for injury. Even if the officers' alleged treatment of Joseph was unnecessary, it appears to have represented, at most, ordinary negligence. In apprehending Joseph, the officers were certainly acting in the course of their employment and reasonably believed that they were acting within the scope of their authority. It is also clear that apprehending offenders is a governmental function carried out by police officers. Because the officers' conduct does not amount to gross negligence, the Court concludes that they are entitled to governmental immunity with respect to the negligent infliction of emotional distress claim. The Court therefore grants summary judgment for Defendants on Count Eleven.

### IV. Conclusion

The remaining claims in this suit are those arising from Krause's alleged pointing of a pistol at Mrs. Saad. These claims do not pertain to Mahmood Saad, as Plaintiffs have

not presented evidence suggesting that Krause pointed a weapon at him or otherwise used excessive force against him.  There is also no evidence indicating that Mr. Saad observed Krause pointing a weapon at Mrs. Saad.  Because the remaining claims fail to assert any injury to Mr. Saad, the Court concludes that he is appropriately dismissed from this action.

Accordingly,

**IT IS ORDERED** that Defendants' motion to strike Plaintiffs' surreply brief is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART**.  Summary judgment is **DENIED** with respect to Plaintiffs' claims relating to Officer Krause's pointing of a weapon at Zihra Saad (Counts One, Eight, Ten, and Twelve), and **GRANTED** with respect to Plaintiffs' remaining claims.

**IT IS FURTHER ORDERED** that Defendants Ross, Smith, Duffany, Oblak, the unnamed police officer defendants, and the City of Dearborn Heights are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiff Mahmood Saad is **DISMISSED** from this action.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Haytham Faraj, Esq.
Nemer Hadous, Esq.
Jeffrey R. Clark, Esq.